OPINION OF THE COURT
JORDAN, Circuit Judge.
Latacha Renee Thompson appeals the judgment of conviction, entered against her by the United States District Court for the Middle District of Pennsylvania, for interstate transportation in aid of drug trafficking, in violation of 18 U.S.C. § 1952(a)(3). Thompson alleges that police violated the Fourth Amendment by stopping and searching her car without reasonable suspicion. Because the police did have reasonable suspicion, we will affirm.
I. Background
On May 14, 2007, Keith Kierzkowski, a special agent in the Harrisburg, Pennsylvania office of the Drug Enforcement Administration (“DEA”), received a call from a confidential informant. The informant, who had provided Kierzkowski with reliable information in the past, told him that Thompson and Duwanna Robinson planned to drive to Georgia in a rental car to purchase cocaine. The informant also told Kierzkowski when and where Thompson planned to pick up Robinson.
Kierzkowski and two other DEA agents went to the location specified by the informant and observed Thompson pick up Robinson in a rental car. They followed the car as it made various stops but, eventually, Thompson sped up and Kierzkowski and his fellow agents lost sight of her vehicle. Knowing the road Thompson had turned, onto, Kierzkowski radioed ahead to Pennsylvania State Trooper Tony Todaro, explained the situation, and asked him to pull the vehicle over.
Todaro stopped Thompson’s vehicle for speeding and issued her a warning. During the course of the stop, Todaro received Thompson’s permission to search the rental car. He found $25,000 in currency packaged in 25 individual bundles. The *898 currency was seized, and Thompson was permitted to leave.
On June 13, 2007, the informant called Kierzkowski and told him that Thompson and a man named Clifford Bradley had rented a ear at the Harrisburg Airport and driven it to Philadelphia, where they had boarded a flight to Georgia. The informant also said that Thompson and Bradley would be returning to either Philadelphia or Harrisburg by train with a large quantity of cocaine. After speaking with the informant, Kierzkowski contacted rental car companies in Harrisburg and confirmed that Thompson and Bradley had rented a car. He also verified that they had taken a flight from Philadelphia to Atlanta, Georgia, and he located the rental car they had parked at the Philadelphia airport.
Kierzkowski coordinated surveillance of the vehicle, and, on June 15, he observed Thompson and Bradley return to it, place luggage in the trunk, and leave the airport. He then followed the vehicle from the airport and eventually radioed Todaro and another state trooper, Brian Overcash, with the information he had about Thompson and Bradley. The troopers waited for the car on the Pennsylvania Turnpike and pulled it over after determining that it was going 75 miles an hour in a 65 mile an hour zone. Overcash approached the vehicle, which was being driven by Thompson, and informed the occupants that they had been stopped for speeding.
After issuing Thompson a warning for speeding, Overcash asked if Thompson and Bradley would answer a few questions. At that point, Todaro approached and Thompson, who recognized Todaro from their previous encounter, became agitated. The troopers asked for permission to search the car. Thompson and Bradley denied their request. The troopers then called a detective with a drug dog to do an exterior scan of the vehicle. The detective arrived within minutes, and, during the exterior scan of the vehicle, the dog alerted to the scent of drugs. The troopers handcuffed Thompson and Bradley, placed them in the back of the police vehicle, and applied for a warrant to search the rental car. The warrant issued and police found eight ounces of cocaine in the car.
On June 20, 2007, a grand jury returned an indictment charging Thompson and two co-defendants with conspiracy and possession with intent to distribute 50 grams or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 846. Thompson brought a motion to suppress the evidence found during the search of the rental car on June 15, 2007, arguing that the police lacked reasonable suspicion to stop her vehicle and perform an exterior scan with a drug dog. After a hearing, the District Court denied Thompson’s motion to suppress, and she agreed to plead guilty to two counts of interstate travel in aid of drug trafficking, in violation of 18 U.S.C. § 1952(a)(3). In her plea agreement, Thompson preserved the right to appeal the District Court’s denial of her motion to suppress.
Thompson was sentenced to 51 months in prison, 26 months for Count 1 and 25 months for Count 2, with the terms to run consecutively. She filed a timely appeal of her conviction, and, on appeal, renews her argument that the troopers lacked reasonable suspicion to stop her car and conduct an exterior scan with a drug dog.
II. Discussion[1]
The Fourth Amendment permits police officers to stop vehicles briefly for further *899 investigation when they have reasonable suspicion that criminal activity may be afoot. United States v. Silveus, 542 F.3d 993, 999 (3d Cir.2008). During these brief investigatory stops, officers may use dogs trained to detect narcotics. See Illinois v. Caballes, 543 U.S. 405, 410, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005) (“A dog sniff conducted during a concededly lawful traffic stop that reveals no information other than the location of a substance that no individual has any right to possess does not violate the Fourth Amendment”).
In determining whether officers had reasonable suspicion, we look at the totality of the circumstances from the officers’ viewpoint and ask whether they had a particularized and objective basis for suspecting that the individuals they stopped were engaged in criminal activity. Mathurin, 561 F.3d at 174. When officers conduct an investigatory stop based on information provided by another officer, our inquiry focuses on whether the officer who provided the information had reasonable suspicion. United States v. Brown, 448 F.3d 239, 248 (3d Cir.2006). When an investigative stop is made primarily on the basis of a tip from an informant, we consider both the reliability of the informant and the content of the tip in determining whether the tip was sufficiently reliable to create reasonable suspicion. United States v. Goodrich, 450 F.3d 552, 560 (3d Cir.2006).
In this case, a confidential informant told Kierzkowski that Thompson and Bradley had rented a car in Harrisburg, driven it to Philadelphia, flown to Atlanta to purchase cocaine, and would be returning to Philadelphia or Harrisburg by train. The informant had provided Kierzkowski with reliable tips in the past, including information about Thompson that had only a month earlier led to the seizure of $25,000. In addition, Kierzkowski was able to verify several details from the most recent tip, including that Thompson and Bradley had rented a car in Harrisburg, had driven it to Philadelphia, had taken a flight to Atlanta, and were returning to Philadelphia by Amtrak train. Given Kierzkowski’s previous dealings with the informant and his corroboration of details from the tip, we conclude that Kierzkowski clearly had reasonable suspicion that Thompson was involved in criminal activity. Accordingly, the brief investigatory stop that Overcash and Todaro conducted based on information they received from Kierzkowski did not violate the Fourth Amendment.
III. Conclusion
Because the officers had reasonable suspicion, we will affirm the District Court’s decision to deny Thompson’s motion to suppress.

. The District Court had jurisdiction under 18 U.S.C. § 3231, and we have appellate jurisdiction under 28 U.S.C. § 1291. In considering the District Court's denial of Thompson's motion to suppress, we review the District Court’s factual findings for clear error and *899 exercise plenary review over its application of the law to the facts. United States v. Mathurin, 561 F.3d 170, 173 (3d Cir.2009).